Mr. Justice Merrick
delivered the opinion of the court.
The court has considered the facts in this case, and thinks it is apparent that the complainant is not entitled to any relief whatsoever at the hands of a court of equity or of any other court as against the District of Columbia.
He claims that on a certain day he paid the taxes which were due by him to the District of Columbia in a check for four hundred and ninety odd dollars on the bank of Middleton & Co. of this city, which bank was open at the time the check was drawn and remained open the next day. The third day, however, it suspended, and the collector not having presented the check there on the day of its receipt or the day after, it is claimed therefore that the complainant is to be credited with the amount by reason of the default of the collector in not presenting the check in due season, according to the mercantile law, for payment at that bank.
There is no question in this case, as to the law touching commercial paper, or the obligation of a holder to present a check within a reasonable period — twenty-four hours if in the same town; and if he does not present it in that time, and the bank thereafter fails,'the drawer of the check would be entitled to be discharged, because that check has been a payment as between the original parties to the check.
But the question in this case, as I say, is not a question of commercial law; it is a question of agency. Was the collector of taxes authorized by the law of the land, or by any properly delegated authority from the municipal officers superior to him, to accept in payment of taxes anything else than money?
The doctrine which expands an agency by reason of the acts and dealings of the parties from time to time, has no application whatsoever to the official acts of a public officer. Everybody knows by the public law of the land (or is charged with knowledge of) the extent of the power of that officer, and his superior officers, so to speak, cannot qualify it except so far as the law has delegated to them a *342 power to control, or modify, or expand his legal obligations. Hence, there can be no such thing as a presumption of agency growing out of the dealings of a public officer in respect to his public duty; because whatever presumption, as between private parties, might arise in favor of a delegated authority from an outward act of dealing, so far as the public officer is concerned that presumption is repelled by the known law of the land, the knowledge of which is imputed to every citizen, which known law of the land limits, defines and bounds his power, and qualifies and corrects any presumption of agency which might otherwise arise out of these acts and dealings.
That being the case, what is the effect of a payment by a check ordinarily? It is but in itself a conditional payment to be ripened into an actual payment, provided the check be honored by the bank. But the probability that that conditional payment may be ripened into an actual payment, does not advance a single step towards the establisment of a right of a public officer in the character of agent of the public to surcharge the public with an additional risk in respect to the collection of its public dues.
The law says that the collector shall collect the taxes. The law further, to secure the taxes, and in addition to the personal responsibility, makes the taxes a lien upon the real estate — the visible estate of the party in question. Now can it be said that a practice, no matter how long indulged in by the collector for the convenience of parties, of receiving from tax-payers checks upon their bankers can be considered to supersede, to dispense and put aside at his pleasure the lien of absolute security which the public has for the collection of its taxes by its hold upon the property of the party? That would extend the law of agency beyond anything that has any foundation in well-established precedents or authority in the books, because the books say that by the taking of a check you superadd to the original predicament of uncertainty of payment as between the debtor and creditor, the uncertainty of payment arising out of the possible insolvency of the drawee of the check, and the ob *343 ligations of diligence on the part of the holder to present that check within due season in order to preserve his demand against the original holder.
That being the law of agency, so far as agents are concerned and the law modifying the payment of agents, can it be said that a public collector, without any warrant of law whatsoever, who is dealing for the convenience of the parties, is authorized to put his personal judgment, his personal inclination to promote the convenience of and to accommodate the tax-payer in lieu of the legal lien, and thus, for those imperfect and almost frivolous considerations, so to speak, to waive the certainty of the right of collection and the security that the public has for its taxes?
But in this particular case, even if you were to assume that there was the semblance of a recognized practice ripening into law to pay by checks, that surely would only be a recognized usage to pay by checks upon authoritative and well-established banks. The word “check” has a signification, a sort of cabalistic meaning, in the mind of the public, because it represents ordinarily, and the meaning of the term implies, that it'is a draft by a holder or depositor upon a well-accredited and established bank which stands almost in the place of an actual bank note from the bank itself. And it is because of that character that the commercial law has attached to it the consequences which follow by reason of the presumption of a payment when it passes from man to man in their private transactions.
But can it be said that the recognition of such a usage, such a qualified mode of payment with regard to a check thus designated and characterized, and which is the true meaning of it, can be expanded into the recognition of an agency on the part of the collector to take a private order from any individual against another individual, or any of these brokers who are about in the town here, who assume to themselves, for the purposes of their own trade, the formal, the solemn, the imposing epithet of bankers? They are not bankers in any sense of the term. They do not come within the proper designation of bankers, and a check upon *344 these so-called hankers, if you would translate it into the common English, and say that a man has given to the collector an order upon some private broker down in town here, some private individual, you would at once see that this did not come at all within his power and authority as a designated agent, so as to relieve the drawer of that check of his obligation and throw the burden upon the District of Columbia for non-payment upon the presumption of the agency.
That was the character of this check — an order given on the supposed or so-called banking house of Middleton & Co., who were utterly insolvent at the time it was granted, and who made an assignment the day after. Under circumstances of this sort it would be of the saddest consequence, it would be subversive of the whole security of the public for a court of justice to entertain for a moment the idea that checks of that description could be considered as payment of taxes, the citizen be subserved, and the public thrown into the necessity of making up for the want of credit' of the parties upon whom such drafts are drawn.
There was a case somewhat similar to this in its general features decided' in England in the year 1839, which was the case of Bridges vs. Garrett, reported in the Law Reports, 5 Common Pleas, page 451, which was the case where the steward of a lord had received the sum of seventy-eight pounds and odd shillings in payment of a fine for the renewal of certain copyholds. The check was drawn upon a banker and was a cross check as they call it in England, and that check was put to his credit in the bank, it was actually paid and went to the credit of the agent who was entitled to receive the money, and afterwards the fund was stopped hy the bank, it having been mingled with his common account, for the purpose of making up a deficiency in that account as between him and the bank. The question there was whether the payment of that check under such circumstances was a valid payment. The court below refused to admit it as a payment even under such circumstances, but the court above said that the check having *345 been, in point of fact, paid as a check, and then deposited by the agent in his own hank, he had, therefore, received it, and being authorized to receive the amount of the fine, and the check having heen actually paid, it .thereby became a payment, and his depositing it in his hank, and its subsequent conversion by his banker to his own private account, would not deprive it of the character of a payment when it was honored at the bank upon which it was drawn as between the debtor and the creditor.
And that is the whole scope of this case, and of the whole line of cases. I have not seen a. case anywhere reported in which it was held that payment by a check which was afterwards dishonored could be considered a payment, in any sense of the law, unless the party who received it had heen specially authorized to receive it, or by the course of trade was to he presumed to have' heen authorized to receive it, and thus to assume for the creditor the additional burden of the risk of want of diligence in the presentation of the same.
But it is utterly inadmissible in the case of public officers to add to the trouble and burdens of the public for the purpose of saving an individual who has paid by check exclusively for the gratification of his own private convenience. Having done it for his own convenience he must take the consequences of having made the collector of taxes his own agent, and not say that in that respect he was the agent of the public.
Under these circumstances the decree of the court below will be affirmed with costs.
Mr. Justice Cox said:
I agree in the conclusion announced in this case, but I have some doubts about it and, therefore, do not wish to be committed to the general proposition that would exclude from a case of this kind the general rules about commercial paper.
It is conceded, as between individuals, if a man gives a check in payment of a debt on a solvent bank which would *346 be honored on presentation, and the money is lost through the failure of the creditor to apply for the money until the bank has become insolvent, that the creditor makes the check his own, and his debt is considered paid.
I doubt whether a different rule applies where a check is tendered and received in payment of public dues. It-would rather seem to me that under the circumstances presented in this case, it would be substantially the same as if the creditor had had the check passed to his credit, and had lost it afterwards by allowing it negligently to remain in the bank until it had become insolvent.
But however that may be, it is demonstrated in this case that at the time the check was given the so-called bank was absolutely insolvent. By the testimony of the bankers themselves it appears that the assets at the time did not amount to one-tenth of the liabilities of the bank. The burden of proof, of course, is upon the complainant in a case like this to show that his check was good, and that the loss was caused by the neglect of the other party.
The proof in the case utterly fails to satisfy us that this check would have been paid if it had been immediately presented. The testimony of one of the bankers is that the check would have been paid if presented, as another check for $71 had been paid the same day. We think that is totally unreliable. It appears that after the assignment, which was made the next day, when the receiver took possession of the bank there was not more than forty .or fifty dollars in the bank in cash. The banker testifies that on the twenty-ninth there were several thousand dollars in bank. Whether it was there five minutes after the time the bank opened and was available for the payment of this check or not is not shown. The books have not been produced to show what amount of money there was. The burden of proof is on the plaintiff, and he has certainly failed to satisfy us that the check was worth a cent.